In re Sulochana D. KAPINOS, Debtor.

Sulochana D. Kapinos, Plaintiff/Appellee,

v.

Graduate Loan Center, A Division of Pennsylvania Higher Education Assistance Agency, Defendant/Appellant.

Bankruptcy No. 97–01593–HPR–7. Adversary No. 97–00142–HPR. Civ. Action No. 7:99–CV–00601.

United States District Court, W.D. Virginia, Roanoke Division.

Jan. 4, 2000.

Darren T. Delafield, Roanoke, VA, for Sulochana Kapinos.

Howard J. Beck, Jr., Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellants.

Roy V. Creasy, Roanoke, VA, trustee.

## MEMORANDUM OPINION

WILSON, Chief Judge.

This matter is before the court on appeal from the U.S. Bankruptcy Court. *See* 28 U.S.C. § 158(c)(1); Fed.R.Bankr.P. 8001(e). Debtor Sulochana D. Kapinos ("Kapinos") filed a Chapter 7 petition in Bankruptcy Court on April 25, 1997. After filing her petition, Kapinos filed two adversary proceedings against three student loan entities seeking to discharge five loans. The Bankruptcy Court heard the adversary proceedings jointly on January 25, 1999, and on June 11, 1999, the Bankruptcy Court issued an unpublished memorandum in which the court discharged most, but not all, of four loans, and discharged one loan entirely. Creditors Graduate Loan Center and Pennsylvania Higher Education Assistance Agency (the "creditors") filed a timely appeal. This court finds that the Bankruptcy Court was correct in holding that Kapinos's loans could be discharged in part, and remands the case to the Bankruptcy Court for further proceedings consistent with this opinion.

I.

In 1995 and 1996, Kapinos obtained five student loans for the purpose of financing her law school education at Nova Southeastern University in Florida. Kapinos obtained two student loans from Key Bank, which were guaranteed by The Educational Resource Institute ("TERI") and have a current principal balance of $25,269.60; two loans guaranteed by the Pennsylvania Higher Education Assistance Authority ("PHEAA") with a current principal balance of $19,768.10; and one loan from EDUCAP (trading as Concern Education) with a current principal balance of $3,767.14. The Graduate Loan Center is the guarantor and servicer of Kapinos' PHEAA and TERI loans. The total balance of the student loans with interest is approximately $48,000.

Kapinos left law school short of graduation, completing only one and one-half years of study. She is currently employed at BB & T as a customer sales representative, earning $8.00 per hour and working approximately forty hours per week. Kapinos earned a B.A. degree in hotel management, but has been unable to find employment in her educational field. Kapinos is married, but separated, has no dependants, and there is no evidence of any medical or physical conditions that would prevent her from remaining employed.

According to her schedules, Kapinos earns $1,156.78 per month and incurs $2,028 per month in expenses. The bankruptcy court concluded after reviewing her schedules that Kapinos could reduce a portion of her expenses, though the court did not specifically identify which expenses Kapinos could reduce or the sum of the reducible expenses. Kapinos made no effort to repay her loans after leaving law school, and made no request for deferment. Kapinos filed for bankruptcy approximately five months after leaving law school.

## II.

The district courts of the United States have jurisdiction to hear appeals from final judgments of the bankruptcy courts. *See* 28 U.S.C. § 158(a). The district court reviews the bankruptcy court's conclusions of law de novo. *See* Fed. R.Bankr.P. 8013; *Resolution Trust Corp. v. C. & R.L.C.,* 165 B.R. 593, 595 (W.D.Va. 1994). Factual determinations are reviewed under a clearly erroneous standard. *See Commonwealth of Virginia State Educational Assistance Authority v. Dillon (In re Dillon),* 189 B.R. 382, 384 (W.D.Va. 1995). The district court is limited to considering only that evidence presented to the bankruptcy court and made part of the record. *See id.*

## III.

The issue presented in this case is governed by 11 U.S.C. § 523, which provides in relevant part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend,

. . .

(B) unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. . . .

Congress did not define "undue hardship" in the Bankruptcy Code, preferring to leave the construction of that phrase to the courts. One judge in this district has adopted the three-part test for determining "undue hardship" set forth by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987), and this court will follow that analysis. *See In re Dillon,* 189 B.R. at 384 (adopting *Brunner*). Under the *Brunner* test, a debtor seeking to establish a case of "undue hardship" must show:

(1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396.

The bankruptcy court applied *Brunner* and concluded that Kapinos could take reasonable steps to reduce her monthly expenses and that it would not create an undue hardship on Kapinos to repay a portion of the student loan. The court

then issued an order providing that Kapinos pay, without interest, part of her loan obligation, over a five-year period, and discharging the rest. Both parties agree that *Brunner* constitutes the appropriate analysis. The creditors appeal, however, on the ground that the bankruptcy court committed legal error in discharging a portion of Kapinos' burden. Section 523(a)(8), in their view, constitutes an all or nothing proposition: a court must discharge the entire debt if a condition of "undue hardship" would follow from requiring payment of the debt, or require payment of the entire debt if "undue hardship" is not found. The Fourth Circuit has not yet addressed the issue of partial discharge of student loans. However, the wide majority of courts that have considered the question, including bankruptcy courts, have concluded that § 523(a)(8) permits partial discharge.[1] This court finds the majority view persuasive and holds that § 523(a)(8) authorizes a bankruptcy judge to partially discharge a debtor's student loan obligation.

The language of § 523(a)(8) does not explicitly authorize partial discharge. The courts that have adopted the minority position conclude from the absence of an affirmative statutory authorization that § 523(a)(8) unambiguously precludes partial discharge. *See In re Taylor*, 223 B.R. at 752; *In re Hawkins*, 187 B.R. at 301.

These courts refer to §§ 523(a)(2), (a)(5), and (a)(7), which authorize partial discharge by inclusion of the phrase "to the extent," and conclude from this that "where Congress has failed to include language in statutes, it is presumed to be intentional where the phrase is used elsewhere in the Code." *In re Taylor*, 223 B.R. at 753; *see* 11 U.S.C. §§ 523(a)(2), (a)(5), (a)(7).

This court finds unpersuasive the plain language position set forth in *In re Taylor* and *In re Hawkins*. As the Southern District of California noted in *In re Brown*,

"the phrase 'to the extent' in section 523(a)(2), (a)(5), and (a)(7) serves a different purpose than it would if used to allow partial discharge under section 523(a)(8).... Specifically, it separates debts into categories which may or may not be dischargeable. For example, section 523(a)(2) states that money, property, or services are not dischargeable 'to the extent' they are obtained by false pretenses or fraud.... The phrase 'to the extent' thus describes the type of debt dischargeable rather than referring to the amount of debt to be discharged.... [T]he intentional omission of the phrase in section 523(a)(8) does not support the interpretation of dischargeability under this section."

1. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438–40 (6th Cir.1998); *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 360 (6th Cir.1994); *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993); *Great Lakes Higher Educ. Corp., et al. v. Brown (In re Brown)*, 239 B.R. 204, 210–12 (S.D.Cal. 1999); *Williams v. Missouri State College (In re Williams)*, 233 B.R. 423, 430 (Bankr. W.D.Mo.1999); *Rivers v. United Student Aid Funds, Inc. (In re Rivers)*, 213 B.R. 616, 618 (Bankr.S.D.Ga.1997); *Heckathorn v. United States (In re Heckathorn)*, 199 B.R. 188, 195–96 (Bankr.N.D.Okla.1996); *Wetzel v. New York State Higher Educ. Servs. Corp. (In re Wetzel)*, 213 B.R. 220, 226–27 (Bankr. N.D.N.Y.1996); *Raimondo v. New York State Higher Educ. Servs. Corp. (In re Raimondo)*, 183 B.R. 677, 681 (Bankr.W.D.N.Y.1995);

*Fox v. Student Loan Mktg. Ass'n (SLMA) (In re Fox)*, 189 B.R. 115, 117 (Bankr.N.D.Ohio 1995); *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh)*, 174 B.R. 707, 711–12 (Bankr.N.D.Ohio 1994); *Woyame v. Career Educ. & Management (In re Woyame)*, 161 B.R. 198, 203 (Bankr.N.D.Ohio 1993); *Silliman v. Nebraska Higher Educ. Loan Program (In re Silliman)*, 144 B.R. 748, 752 (Bankr. N.D.Ohio 1992); *Bakkum v. Great Lakes Higher Educ. Corp. (In re Bakkum)*, 139 B.R. 680, 684 (Bankr.N.D.Ohio 1992); *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98, 102–03 (Bankr.N.D.Ohio 1982); *Littell v. State of Oregon (In re Littell)*, 6 B.R. 85, 89 (Bankr.D.Or.1980). *Contra United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 752–54 (9th Cir. BAP 1998); *Hawkins v. Buena Vista College (In re Hawkins)*, 187 B.R. 294, 300–01 (Bankr.N.D.Iowa 1995).

*In re Brown*, 239 B.R. at 211. The weakness of the plain language position is reinforced by the legislative history of § 523. Originally, the Bankruptcy Code included no prohibition on the discharge of student loans. *See* Thad Collins, *Forging Middle Ground: Revision of Student Loan Debts in Bankruptcy As an Impetus to Amend 11 U.S.C. § 523(a)(8)*, 75 Iowa L.Rev. 733, 740 (1990) ("Because neither the old Bankruptcy Act nor the laws governing the student loan programs expressly prohibited the discharge of loans in bankruptcy, they were presumed to present no impediment to discharge."). Subsequent amendments limited discharge to persons who had a five-year period pass since their loans first came due, and to persons who could show that undue hardship would result if they were forced to repay their student loans. *See* 11 U.S.C. § 523(a)(8) (Historical and Statutory Notes). In 1990, Congress increased the discharge limitation period in § 523(a)(8) from five to seven years. *See id.* Finally, Congress amended § 523(a)(8) in 1998 by removing the limitation period altogether, thus permitting discharge only when a person establishes undue hardship. *See id.*

■ Congress changed section 523(a)(8) because of an increase in bankruptcy proceedings by former students trying to avoid repaying their student loans. *See* Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14 (recognizing a "rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts."). This pattern of amendment represents an obvious tendency on the part of Congress to tighten the gaps through which students could avoid loan repayment. To use an all-or-nothing approach "has the effect of rendering large debt more likely of discharge, and rewarding irresponsible borrowing, neither of which can be presumed to be part of congressional intent." *In re Brown*, 239 B.R. at 211. The fact that § 523(a)(8) does not, on its face, provide

for partial discharge does not render the court powerless to interpret § 523 in a manner which comports with the over-riding intent of Congress. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (noting that when a "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, ... [then] [i]n such cases, the intention of the drafters, rather than the strict language, controls.").

■ A majority of courts have held that bankruptcy courts are empowered to partially discharge a debtor's student loan by virtue of 11 U.S.C. § 105. *See, e.g., In re Hornsby*, 144 F.3d at 440. Section 105 provides that:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). This "statutory directive [is] consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). Section 105(a) essentially allows a bankruptcy court to tailor an equitable solution around the facts of a particular case. The precise scope of a bankruptcy court's equitable power "is as yet undefined," *In re Hornsby*, 144 F.3d at 439, and is limited where there are clear statutory directives that speak to the court's power. As indicated above, this court finds no statutory directive that prohibits the bankruptcy court from ordering partial repayment of student loans. In addition, this court can identify no policy

rationale for ignoring the flexibility of § 105 and requiring an all-or-nothing approach to § 523(a)(8). Such a rule would operate to either relieve a debtor from any obligation to repay a loan, though the debtor is capable of making some repayment, or force a debtor to repay the entirety of a loan and therefore fail to satisfy the Bankruptcy Code's objective of relieving "the honest debtor from the weight of oppressive indebtedness and permit[ting] him to start afresh." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

■■■■ The court recognizes the breadth and diversity of remedies available to a bankruptcy court under § 105 to ensure that the dual policies of § 523(a)(8)— ensuring the solvency of student loan programs while providing relief to debtors, in appropriate cases, from oppressive financial circumstances—are accomplished.[2] The court therefore concludes that § 523(a)(8), understood in combination with § 105, authorizes partial discharge of student loans. If the bankruptcy court finds that the *Brunner* standard has been met, it may, in exercise of its equitable power, discharge all of Kapinos' loans or only a portion of them. Likewise, the bankruptcy court may exercise its equitable power under § 105 to discharge a portion of Kapinos' student loans even if it finds that the *Brunner* standard has not been satisfied.

### IV.

■■■■ Applying *Brunner*, the bankruptcy court found, first, that Kapinos' expenses currently outweigh her monthly income but that it was possible that she could reduce a portion of her monthly expenses. The court did not, however, specify which expenses Kapinos could reduce or the total monthly sum of these reductions. Second, the bankruptcy court found that Kapinos' financial condition was likely to continue in the future, noting that Kapinos is precluded from her failure to complete law school from taking any bar exam, and that she has been unable to procure employment in the field of hotel management, where she received her undergraduate degree. The bankruptcy court did not address the "good faith" prong of *Brunner*, other than to note that Kapinos has made no attempts to repay that loan and has made no requests for deferments.

■■■■ The bankruptcy court's findings of fact were insufficient to determine whether the first or third prongs of *Brunner* — inability to maintain a minimal standard of living and good faith—have been met. This court therefore remands the matter to the bankruptcy court for additional findings of fact. On remand, the bankruptcy court should identify the particular monthly expenses that Kapinos could reduce and the total amount of reducible expenses, and determine whether Kapinos has satisfied the "good faith" standard of *Brunner*.[3] After making these determinations, the court should exercise its authority under §§ 105 and 523(a)(8) as indicated above.

### V.

For the reasons stated above, the case is remanded to the U.S. Bankruptcy Court

---

**2.** *See, e.g., In re Roberson*, 999 F.2d at 1134 (ordering two-year deferment of payments); *In re Hornsby*, 144 F.3d at 438, 440 (finding that debtor did not meet "any test of undue hardship" but authorizing discharge of a portion of debt nevertheless in order to given the debtor a "fresh start"); *In re Bakkum*, 139 B.R. at 684 ("The Court, at its discretion, may excuse any portion of the Debtor's student loan obligation which would create an undue hardship."); *Berthiaume v. Pennsylvania Higher Educ. Assistance Auth. (In re Berthiaume)*, 138 B.R. 516, 521 (Bankr.W.D.Ky.

1992) (restructuring payment plan for nondischargeable loans).

**3.** In addressing the good faith question, the bankruptcy court should be guided by the principle that the "mere failure to make minimal payments on a student loan does not prevent a finding of good faith where the debtor never had the resources to make payments." *In re Brown*, 239 B.R. at 209 (*quoting Clevenger v. Nebraska Student Loan Program (In re Clevenger)*, 212 B.R. 139, 146 (Bankr. W.D.Mo.1997)).

for proceedings consistent with this opinion.