**In re Simin SHIRZADI, Debtor.**

**Simin Shirzadi, Plaintiff,**

**v.**

**U.S.A. Group Loan Services, Barnett Banks & Trust Co., Nova University, Educational Loan Servicing Center, Crestar Bank, and United Student Aid Group, Defendants.**

Bankruptcy No. 00–04521–JKC–7.
Adversary No. 00–290.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Nov. 19, 2001.

Jonathan F. Teitenberg, Brown, Todd & Heyburn, Louisville, KY, for Creditor–Objector.

Mark Zuckerberg, Indianapolis, IN, for Debtor.

## MEMORANDUM DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on Debtor/Plaintiff Dr. Simin Shirzadi's ("Shirzadi" or "Debtor") Complaint to Determine Dischargeability of Student Loan Obligations For Undue Hardship against Defendants U.S.A. Group Loan Services, Barnett Banks & Trust Co., Nova University, Educational Loan Servicing Center, Crestar Bank, and United Student Aid Group (the "Defendants"). The Court conducted a trial in this proceeding on September 21, 2001, at which appeared Shirzadi appeared, in person and by counsel, Mark S. Zuckerberg and Michael S. Stearsman; the Defendants appeared by counsel for Educational Credit Management Corporation ("ECMC"), John F. Teitenberg and Edward M. King. The Court took the matter under advisement and now issues the following Memorandum Decision, which shall constitute the Court's findings and conclusions as required under Rule 7052 of the Federal Rules of Bankruptcy Procedure. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### Procedural and Factual Background

On April 17, 2000, Shirzadi initiated a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, et al., (the "Code"). Shirzadi eventually filed a Complaint against the Defendants pursuant to 11 U.S.C. § 523(a)(8), seeking to discharge her student loans (the "Loans") on the grounds that their repayment would result in an "undue hardship" for her and her dependents. The Defendants, by ECMC as assignee,[1] answered and challenged Shirzadi's claim of undue hardship.

Shirzadi, who is now 44 years old, has an extensive educational background. She earned a Bachelor of Science in Interpersonal and Organizational Communication, with minors in Industrial Manufacturing and Sociology, from Western Michigan University ("WMU") in 1980. She then obtained a Master of Arts in Administration and Higher Education in 1981, and a Speciality of Educational Leadership degree in Administration and Higher Education in 1985, both from WMU. In 1987, Shirzadi began a doctorate program in Sociology, Applied Research, Organization and Medical Sociology at WMU. It appears, however, that this program was terminated and Shirzadi was unable to complete her degree. All of the above education was financed with funds from Shirzadi's father, who lives in Iran.

In 1992, Shirzadi enrolled at Nova Southeastern University ("Nova") in Fort

---

1. ECMC's answer in this adversary recites that it is the "assignee of United Student Aid Funds, Inc." Whether the originally named defendants listed in the caption assigned its rights to United Student Aid Funds, Inc. is not apparent from the record; however, this issue is moot since Shirzadi's counsel stipulated on the record that ECMC is the proper party-in-interest to defend this adversary. None of the other named defendants have participated in this action despite having received a summons and the complaint. They, too, have apparently conceded that ECMC is the proper party-in-interest.

Lauderdale, Florida in order to obtain her Ph.D. in Adult Education. During this program, Shirzadi lived primarily in Indiana and traveled periodically to Fort Lauderdale for exams and/or projects. Shirzadi completed her education in approximately June of 1997. To finance her doctoral program at Nova, Shirzadi applied for and obtained over 20 federally-guaranteed student loans. The average amount of the Loans was over $5,000, with the principal totaling approximately $116,000. Since the Loans became due in late 1997/early 1998, Shirzadi has made only two or three payments totaling $450, and the loan balance now totals over $170,000.

In 1987, Shirzadi married Mosen "Michael" Habibi ("Habibi"). Two children were born of the marriage, a son born on April 6, 1992, and a daughter born on October 4, 1993. During their marriage, Habibi was self-employed. From 1992 until the couple's separation in May of 1998, Habibi's income gradually increased from $35,000 to $55,000 per year. During this same period, Shirzadi was employed in various capacities at both Vincennes University and Ivy Tech State College where she earned between $30,000 and $35,000 per year. In June of 1993, the couple filed a Chapter 7 bankruptcy case in which they received a discharge of all unsecured debts. It was not clear from the evidence what precipitated this bankruptcy, although Shirzadi testified that Habibi had suffered a heart condition in either 1992 or 1993 which lead to bypass surgery.

In May of 1998, Shirzadi separated from Habibi, and the couple divorced in December 1999. Per their Divorce Settlement, Shirzadi retained primary physical custody of the children, while Habibi received liberal visitation rights. The couple was to share joint legal custody of the children. Under the agreement, Habibi agreed to pay child support in the amount of $211.00 per week, as well as one-half of the children's medical expenses not covered by insurance. Shirzadi retained a one-half interest in the marital residence and was allowed to reside there for five years before the property had to be sold. According to Shirzadi, there is about $60,000 worth of equity in the home, which is valued at approximately $118,000.

Shirzadi testified at trial that she has not received any child support payments from Habibi. Shirzadi had believed until recently that Habibi returned to his native Iran following the divorce, and she has been unable to locate him. At this time, Habibi owes over $22,000 in back child support. Despite this arrearage, Shirzadi has not taken legal action against her ex-husband, either by contacting any state agency or by seeking judgment against him. Nor has she taken any significant steps to locate him.

Evidence introduced by ECMC indicates, however, that Habibi may still be living in the United States, possibly at the same residence in Indianapolis he had during the couple's separation. This residence was known to Shirzadi and happens to be only a few miles from her home. Habibi is listed in the telephone book for Indianapolis at this address. Certified records from the Indiana Bureau of Motor Vehicles also provide this same address and indicate that he has registered several vehicles every year since the couple's separation. These records further indicate that he continued to pay for Shirzadi's car insurance as late as December of 2000.

Testimony from an investigator hired by ECMC, Daniel Basil, revealed that a 1989 silver Mercedes Benz automobile, of the same make and model year as the car that Habibi drove during his marriage to Shirzadi, was parked outside the above-referenced address shortly before trial. It bore

a "For Sale" sign with a telephone number. When Mr. Basil called this number, he was forwarded to voicemail for "Michael Habibi." Shirzadi testified during the second day of the trial that she investigated this address and was told by the apartment manager that Habibi had recently moved. ·She made no further inquiries.

### Discussion and Decision

 While government guaranteed student loans generally may not be discharged in bankruptcy, Code § 523(a)(8)(B) permits the discharge of such loans when the failure to do so would "impose an undue hardship on the debtor and the debtor's dependents." The Seventh Circuit Court of Appeals, in defining "undue hardship" has adopted the three-prong test originally set forth by the Second Circuit in *Brunner v. New York State Higher Education Services, Corp.*, 831 F.2d 395 (2d Cir.1987). *See In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993). This test requires the debtor to show by a preponderance of the evidence that (1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself or her dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the student loans; and (3) the debtor has made good faith efforts to repay the loans. *Id.* (citing *Brunner*, 831 F.2d at 396).

### I.

 As explained in *Roberson*, "[t]he first prong of *Brunner* requires an examination of the debtor's current financial condition to see if payment of the loans would cause [her] standard of living to fall below that [which is] minimally necessary." *Id.* This test requires "more than a showing of tight finances, and is not met 'merely because repayment of the borrowed funds would require some major personal or financial sacrifices.'" *Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore)*, 230 B.R. 22, 26 (Bankr.D.Conn. 1999) (citing *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir.1995), *cert. denied*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996)). However, the test does not require a debtor to demonstrate that repayment of the loan would cause her and her family to live at or below poverty level. *Lebovits v. Chase Manhattan Bank (In re Lebovits)*, 223 B.R. 265, 271 (Bankr. E.D.N.Y.1998).

Shirzadi's amended Schedule J lists monthly expenses of $3,236.43 and monthly income of $3,162.26, creating a shortfall of $74.17. While Shirzadi claims that she typically does not earn enough money to cover her necessary monthly expenses, her spending habits, as reflected in the bank account statements introduced by ECMC, indicate otherwise. These statements show that Shirzadi makes regular purchases at such stores as T.J. Maxx, Marshalls, Toys R Us, Value City, Target, Babies R Us, Designer Shoe Warehouse, Lazarus, Parisian, Von Maur, and Meridian Hair Designs. It also appears that Shirzadi purchased several airline tickets in recent months for herself and/or her children. In addition, Shirzadi contributes biweekly a total of $200 to a retirement account[2] and to an education fund for her children. These expenditures are not necessarily frivolous or wholly dispensable. However, they are substantial and frequent enough to indicate that Shirzadi is

---

**2.** The Debtor has been contributing to this account at least since the time she began studying at Nova. According to her testimony, the account is now worth approximately $57,000. There is approximately $3,800 in the children's education fund.

not struggling to make ends meet, nor is she attempting to minimize her expenses in order to satisfy her student loan obligations. In light of her alleged financial troubles, many of these expenditures can be reduced or eliminated.[3]

It also appears that the Debtor is not maximizing her income. According to her federal tax returns, she typically receives a tax refund of over $3,600 each year, indicating that too much is being withheld in federal taxes from her salary. Per her Divorce Settlement, Shirzadi has also been claiming only one of her children as a dependent on her returns. However, until Habibi pays child support to Shirzadi, she is entitled to claim both children as dependents, again decreasing her tax burden. These changes alone should substantially help Shirzadi pay her student loan debts.[4]

In addition, the Debtor has a significant income source that she has failed to pursue, i.e., the arrearage and ongoing child support owed by her former husband. Habibi is required to pay approximately $850.00 per month in child support to Shirzadi. Unquestionably, receipt of this money would substantially improve Shirzadi's financial situation. The Court acknowledges that there is no guarantee that Shirzadi will ever be able to collect fully the amounts owed to her by Habibi. However, Shirzadi's failure to pursue her husband or his assets for what amounts to a significant support obligation renders her claim of undue hardship somewhat disingenuous.

There is also evidence suggesting that Shirzadi may be under-reporting her monthly income. Shirzadi is currently employed, through Vincennes University, at Ivy Tech State College, where she serves as the Social Studies Program Chair, and she also holds a position at Indiana University–Purdue University Indianapolis as an Associate Professor. According to her tax returns, her income was $37,482 in 1997; $39,308 in 1998; $54,751 in 1999; and $56,668 in 2000. Schedule J states that her net monthly income is $3,162.26. However, during the five months immediately following the commencement of her bankruptcy case, Shirzadi deposited, on average, $5,427.82, into her checking account. In one month, she deposited approximately $8,000 and, in another month, there was $5,000 worth of cash deposits made into her account. Shirzadi alleged, without documentation, that these additional deposits were attributable to loans from her 401(k) account and from her father and sister. She did not, however, indicate any additional sources or amounts of income on Schedules I or J of her bankruptcy peti-

---

3. For instance, Shirzadi's Schedule J indicates that she spends $218.98 every month on telephone service and for long distance calls to her family in Iran. While the Court is sympathetic to her desire to keep in touch with her family, this expense seems exorbitant in light of her financial situation and should be, at the very least, reduced significantly.

4. At trial, Daniel S. Fisher, an attorney from the William D. Ford Direct Loan Program, testified as to Shirzadi's payment options. He outlined an "income contingent" program by which Shirzadi could consolidate all of her loans and then pay a monthly amount, not in excess of 20% of her income that is above the established poverty level, for 25 years. The balance of the loans after this repayment period is then forgiven. Fisher testified that, based on her current income levels, Shirzadi would pay $704.30 per month to service the Loans. This program addresses Shirzadi's concern that at least one of her teaching positions is not guaranteed from year to year. Should her income be reduced, presumably so would her loan payments. Fisher noted that only those loans that are not subject to ongoing litigation may be consolidated. In other words, as long as this case remains pending, Shirzadi is not eligible for the program.

tion.[5]

There is no question that Shirzadi's Loans are substantial and will require a sizable monthly payment for the indefinite future to repay them. However, there are obvious and simple changes that Shirzadi could make to maximize her income and minimize expenses that will result in little hardship to her. Additionally, the Court is not satisfied, at least at this time, that Habibi's support obligation is uncollectible. The Court will be willing to revise that conclusion, *see* Section IV, *infra,* only after Shirzadi takes aggressive action against Habibi and/or his assets to collect the support arrearage, as well as his ongoing support obligation. However, based on the evidence now before it, the Court must conclude that Shirzadi has failed to prove by a preponderance of the evidence that she will not be able to maintain a minimum standard of living if forced to repay the Loans.

## II.

■ Under *Brunner,* Shirzadi must also demonstrate that her "dire financial condition is likely to exist for a significant portion of the repayment period.... Accordingly, 'the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment.'" *See Roberson,* 999 F.2d at 1135 (quoting *Briscoe v. Bank of New York (In re Briscoe),* 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)). In examining the evidence, the Court cannot conclude that Shirzadi's present situation, let alone her future situation, is dire. Shirzadi holds several advanced degrees, including a Ph.D. in Adult Education. She is currently employed at two different in-

stitutions, including a major university in Indianapolis. She earns a respectable income, is not physically or mentally disabled, has healthy children, and owns a home with substantial equity. There is no reason to believe that Shirzadi's current earning potential will be reduced or eliminated in the foreseeable future.

Shirzadi blames much of her financial troubles on her divorce and on her ex-husband's failure to pay his child support obligation. However, as previously stated, the Court is confident that Shirzadi will locate Habibi-even though he has allegedly moved in recent months-with reasonable effort. Shirzadi has several enforcement options available to her to recover not only the support arrearage but also current payments due under the Divorce Settlement. As indicated later in this memorandum, the Court will be more willing to conclude that Shirzadi's financial situation, as it relates to her ex-husband's failure to pay child support, is permanent only after upon a showing that the support due is uncollectible.

In any event, the Court disagrees that Shirzadi's inability to collect child support is the only contributing factor to her alleged financial distress. As explained in Section I, *supra,* Shirzadi has failed to minimize her expenses or maximize her income-factors within her control. There is no reason to believe that she cannot rectify these matters and generate enough funds to at least partially service the Loans. *See* Section IV, *infra.*

## III.

■■ Finally, under the *Brunner* test, Shirzadi must prove that she made a good faith effort to repay the Loans. Good faith

**5.** As discussed more fully in sections II and III of this opinion, *infra,* the Court is skeptical of Shirzadi's claim that she is not receiving child support from her ex-husband. The facts of this case suggest that her frequent cash deposits may be attributable to amounts paid by Habibi to her.

in this instance is measured by efforts to obtain employment, maximize income and minimize expenses. *See id.* at 1136. Furthermore, "undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *Id.* (quoting Comm'n on Bankruptcy Laws of the United States, Report, H.R. Doc. No. 137, 93d Cong., 1st. Sess., Pt. II, at 140 n. 16.).

Shirzadi has not demonstrated that the financial hardship she is suffering from, allegedly at the hands of her ex-husband, is fully out of her control. Assuming that Shirzadi was sincerely unaware of Habibi's whereabouts following their divorce, the evidence shows that she has taken few, if any, steps to locate him or to collect the support from him. As ECMC correctly points out, Habibi acquired a half-interest in the couple's marital home. With at least $60,000 worth of equity in the home, Shirzadi could presumably obtain a judgment against Habibi and execute upon his half of the equity. Collecting both the arrearage-which now totals at least $22,-000-and ongoing support payments of at least $211 each week would make a substantial difference in Shirzadi's financial condition and would better enable her to meet her student loan obligations.

Furthermore, Shirzadi's claim that she has received nothing from Habibi and has been unaware of his whereabouts is not credible. The evidence showed that Habibi was easily located in Indianapolis. He is listed in the phone book and resided, until recently, at the same apartment he had at the time the couple separated and divorced. Shirzadi knew of this address, which is located approximately three miles from her own home. It is difficult to believe that Shirzadi, especially given her financial condition, would have given up on

her search for Habibi so easily. Furthermore, Shirzadi appears to receive significant funds on a regular basis in excess of her stated income. The Court questions Shirzadi's claim that all of these monies are attributable to loans from her family or from her 401(k) account.

The Court reemphasizes that Shirzadi has failed to establish that she has made any good faith effort to minimize her expenses or maximize her income. As outlined previously, despite Shirzadi's claim that she cannot meet her basic monthly expenses, her apparent income, spending habits and financial decisions indicate otherwise. Rather than make even partial payment against her student loan debts, Shirzadi has set aside substantial amounts in her retirement account and the children's education fund. She has failed to minimize her federal tax burden and has, at least according to her bank account statements, expended significant amounts on arguably unnecessary items.

■ The evidence indicates that Shirzadi has paid only $450 on the Loans since they became due in late 1997/early 1998. The Court acknowledges that "the mere failure to make minimum payments on a student loan does not prevent a finding of good faith where the debtor never had the resources to make payment." *See Clevenger v. Nebraska Student Loan Program (In re Clevenger),* 212 B.R. 139, 146 (Bankr.W.D.Mo.1997). However, the evidence here does not support a finding that the debtor *never* had the resources to make payment. Again, given her income and expenses, the Court must conclude that with some diligence and sacrifice, Shirzadi could have made at least partial payments on the Loans for the past several years. In the alternative, she could have sought an additional forbearance period following her divorce, thereby mitigat-

ing the effect of accrued interest and late fees.

## IV.

As an alternative to discharge of her entire student loan debt, Shirzadi has asked the Court to grant a partial discharge of the debt. ECMC challenges this proposal, arguing that Shirzadi is not entitled to a partial discharge until she first satisfies the *Brunner* undue hardship test.[6] In theory, the Court agrees with ECMC; it seems inequitable to allow a debtor who cannot otherwise satisfy Code Section 523(a)(8)'s undue hardship standard, to discharge a portion of his or her student loan debt.[7]

However, the Court finds ECMC's argument less than persuasive when applied to the facts at hand. The Court's conclusion that Shirzadi did not establish an undue hardship is largely based on her failure to

pursue and recover child support from Habibi. The Court assumes that with some diligence, Shirzadi could recover both the arrearage and current payments due from Habibi for child support. However, if an action against Habibi proves impossible or unsuccessful, the Court will consider a partial discharge or some other alteration of her repayment terms. The Court cannot avoid the fact that the amount now due on the Loans is staggering. Even under the income contingent repayment plan, Shirzadi could end up paying well over $200,000 and will be required to pay until she is almost 70 years old. It does not benefit either Shirzadi or ECMC to set her up for ultimate failure or for another bankruptcy.

■ The Court hereby orders that Shirzadi pay $500 per month[8] on her student loans for the next 9 months. By increasing her net income and decreasing certain expenses, Shirzadi should be able to afford

---

**6.** ECMC also argues that Shirzadi failed to cite to any Seventh Circuit authority for partial discharge of student loan obligations. While the Seventh Circuit has not addressed this issue, a growing number of courts have found support for partial discharge both in the text of § 523(a)(8) and under § 105 of the Code. *See, e.g., Barron v. Texas Guaranteed Student Loan Corp. (In re Barron)*, 264 B.R. 833 (Bankr.E.D.Tex.2001); *Great Lakes Higher Educ. Corp. v. Brown (In re Brown)*, 239 B.R. 204 (S.D.Cal.1999); *Wetzel v. New York State Higher Educ. Serv's Corp. (In re Wetzel)*, 213 B.R. 220 (Bankr.N.D.N.Y.1996); *contra, United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747 (9th Cir. BAP 1998); *Mallinckrodt v. Chemical Bank (In re Mallinckrodt)*, 260 B.R. 892 (Bankr.S.D.Fla. 2001). While the Court does not necessarily agree with the application of partial discharge in each of these cases, it does accept the general proposition that such a remedy is authorized under the Code. Partial discharge, as well as other modifications to student loan obligations, allows a bankruptcy court to reach a more equitable result, tailored to a debtor's specific financial situation. The debtor is better able to achieve a fresh start, while still preserving the policy goals behind § 523(a)(8).

**7.** Of course, if Shirzadi had satisfied the undue hardship test, she would be entitled to discharge her entire student loan debt. Contrary to ECMC's argument, courts have granted partial discharges even where the debtor has failed to otherwise satisfy the undue hardship test. *See, e.g., Heckathorn v. U.S. Dept. of Ed. (In re Heckathorn)*, 199 B.R. 188 (Bankr. N.D.Okl.1996) (partial discharge granted even though debtor failed to show that financial distress would continue into the indefinite future); *Fox v. Student Loan Marketing Assoc. (In re Fox)*, 189 B.R. 115 (Bankr.N.D.Ohio 1995) (court reduced student loan debt by 80% even though debtor failed to show she made good faith effort to repay loans).

**8.** In temporarily reducing her monthly payment, the Court is not implying that it will reduce the amount permanently or that the Court has already made a determination that Shirzadi, assuming she ultimately cannot recover child support from Habibi, can afford to pay only $500 each month to ECMC. The reduction is intended to give Shirzadi some "breathing room" to alter her spending habits, maximize her income, and pursue Habibi for his support obligation.

this amount. In 9 months' time, the Court will conduct an evidentiary hearing to determine what steps Shirzadi has taken to recover child support from Habibi, along with what amounts, if any, that she has successfully collected. The Court also will require updated evidence regarding Shirzadi's income and expenses, including evidence of her payroll deductions and federal tax returns. To maintain an argument for partial discharge, Shirzadi will be required to prove to the Court's satisfaction that she took *aggressive* steps to both locate and pursue Habibi through all of the legal channels available to her and that she has made a *serious* effort to maximize her income and minimize her expenses. The Court further orders that no interest or late fees accrue from the date of this Memorandum Decision until further notice.[9] The Court will issue an Order consistent with this memorandum decision.

---

9. The Court's decision to suspend the accrual of interest and late fees also is not necessarily permanent. It is designed to "stop the bleeding" for the time being until Shirzadi has an opportunity to regain her financial footing.