COMMONWEALTH OF VIRGINIA
STATE EDUCATION ASSISTANCE
AUTHORITY, Appellant,

v.

Tony Eugene DILLON and Shonda
Thomas Dillon, Appellees.

Civ.A. No. 94–0685–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 9, 1995.

Daniel G. Bloor, Office of the Attorney General, Richmond, VA, for appellant.

Charles Robison Allen, Jr., Roanoke, VA, for appellees.

George I. Vogel, II, Trustee, pro se.

### MEMORANDUM OPINION

KISER, Chief Judge.

This is a bankruptcy appeal from an order of U.S. Bankruptcy Judge H. Clyde Pearson discharging the debt owed to the appellant. The parties have fully briefed the issues raised on this appeal. The Court has heard argument from the parties. This matter is, therefore, ripe for decision. For the reasons stated below, the bankruptcy court's order will be reversed.

### I. Facts.

Tony and Shonda Dillon filed a joint Chapter 7 petition on May 26, 1992. They received a bankruptcy discharge on August 25, 1992. This adversary proceeding in bankruptcy court was initiated when the Dillons filed a complaint seeking the discharge of a student loan. That action commenced on April 19, 1994. The bankruptcy court held that the student loan would work an undue hardship on the debtors and thus ordered it discharged.

Debtor Shonda Dillon was the borrower on the student loan in question. Mrs. Dillon testified that she worked 32 to 40 hours per week at $5.35 per hour. Transcript of Bankruptcy Proceeding at 7–8 (hereinafter "Tr."). Mr. Dillon worked at least 40 hours per week at a base pay of $7.00. The monthly gross income of each person has increased since the bankruptcy filing. She expected to receive a raise in about six months to a year and the husband would soon move to full-time status.

Regarding expenses, Mrs. Dillon, the only witness at the trial, testified that their rent had increased from $350 to $500 per month since the bankruptcy filing. There are two children, one of whom was born since the bankruptcy filing. Expenses she testified to include:

| | |
|---|---|
| Day care expenses | $35/week |
| Food | $350/mo. |
| Transportation | $100/mo. |
| Home Maintenance | $30/mo. |
| Laundry & Dry Cleaning | $30/mo. |
| Insurance | $75/mo. |
| Utilities | unspecified |
| Medical bills | some unpaid, amount unspecified |
| Cable TV | $35/mo. |
| Clothing allowance | $20/mo. |
| Furniture payment | $100/mo. |

She further testified that they own two cars, a 1979 Oldsmobile and a 1983 Mercury Lynx. While she testified on direct that there was no money left over at the end of the month, she testified on re-direct that she could make monthly payments of $50 or $75 on the loan. The total owed on the loan is around $2000 with a principal balance of $1806.

## II. Standard of Review.

The district court reviews the bankruptcy court's conclusions of law *de novo*. *Resolution Trust Corp. v. C & R.L.C.*, 165 B.R. 593, 595 (W.D.Va.1994); *In re McCauley*, 105 B.R. 315, 318 n. 1 (E.D.Va.1989). Factual determinations are reviewed on a clearly erroneous standard. Fed.R.Bankr.P. 8013. The district court is limited to considering only that evidence presented to the bankruptcy court and made a part of the record. *In re Bartlett*, 92 B.R. 142, 143 (E.D.N.C.1988).

## III. Discussion.

Generally, a student loan is nondischargeable. There are, however, exceptions to this rule. The exception in question here allows a student loan to be discharged if "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C.A. § 523(a)(8)(B) (West 1993). The code does not define the term "undue hardship." Defining the term is a question of law subject to de novo review. *In re Roberson*, 999 F.2d 1132, 1134 (7th Cir.1993).

In an effort to give life to the standard, courts have developed various tests that could be applied.[1] One approach is typified by *In re Johnson*, 5 Bankr.Ct.Dec. (CRR) 532 (Bankr.E.D.Pa.1979). That court's approach applies a number of "tests" to ascertain whether undue hardship exists. A court applies a "mechanical test," a "good faith test," and a "policy test" in order to reach its conclusion. *Id.* at 544. Another approach requires the court to determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living." *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 705 (8th Cir.1981) (quoting *In re Wegfehrt*, 10 B.R. 826, 830 (Bankr.N.D.Ohio 1981)).

The approach that I adopt, however, is the one followed in both the Second and Seventh Circuits. It applies a three-part inquiry to determine if undue hardship exists. The debtor must show

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987); *see also Roberson*, 999 F.2d at 1135. The burden is on the debtor to establish that the circumstances warrant a discharge. *Roberson*, 999 F.2d at 1137; *Andrews*, 661 F.2d at 704 (quoting from legislative history); *Ballard*, 60 B.R. at 674. Based upon the reasoning in *Roberson*, I am persuaded that the *Brunner* test is the better standard to apply. 999 F.2d at 1136–37.[2]

With the applicable standard fixed, I now turn to an analysis of whether the debtor has satisfied this standard. Whether the circumstances meet the test is a question

---

1. Indeed, the lower court in this case has confronted the issue in the past. *See In re Ballard*, 60 B.R. 673 (Bankr.W.D.Va.1986) (Pearson, J.). That decision is not cited in the lower court's opinion.

2. The lower court failed to set out what standard, if any, it applied to the undue hardship issue.

Merely reciting the mantra that the bankruptcy code is to be construed liberally in favor of the debtor is insufficient. This is particularly true when there is such a clear congressional intent to have student loans treated differently. *See Andrews*, 661 F.2d at 704 (quoting at length from legislative history).

of law subject to de novo review. *Roberson*, 999 F.2d at 1137. "In doing so, [I] accept the bankruptcy court's findings of fact, with the exception of those that are clearly erroneous. . . ." *Id.*

The bankruptcy court made several findings regarding expenses and income. It found that Mr. Dillon's gross income was $992 per month. It also made findings with respect to various expenses the couple experienced. For example, the court found that there was a cable television expense of $35 per month. Finally, and most significantly, the court found that the evidence showed the employment of Mr. and Mrs. Dillon "is not with a substantial income nor with a permanent basis." The court also found that: "There is no evidence that [the Dillons'] future earnings will substantially increase."

■ The findings of the bankruptcy court in this regard are clearly erroneous. The testimony of Mrs. Dillon indicates that Mr. Dillon makes $7.00 per hour and works at least 40 hours per week. This leads to a gross income of $1120 per month, not $992 as the lower court found. Furthermore, Mrs. Dillon testified that she anticipated her husband to soon move to "full-time" employment, which certainly implies permanency and upward mobility. Mrs. Dillon also testified to an expected raise in six months to a year. It is also clear, and Mrs. Dillon so admitted on cross-examination, that both her and her husband's incomes have increased. There is no evidence that the jobs of Mr. and Mrs. Dillon are *not* permanent. To the extent that the record is factually inadequate, it is the debtor, who bears the burden of proof, that must cope with the consequences of that inadequacy. Most telling, and a point the bankruptcy court entirely failed to address, is the testimony of Mrs. Dillon on redirect

that she could make $50 to $75 monthly payments on the loan.

■ Applying these facts to the *Brunner* standard, I find that the first prong of the inquiry is not satisfied. The first step requires "an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." *Id.* at 1135. This inquiry is logical given the heightened standard for dischargeability of student loans. *Id.* This step is a threshold question; if the debtor does not satisfy it, then the analysis of the other standards is not required. *Id.*[3] Mrs. Dillon testified she could pay $50 to $75 per month. This clearly demonstrates the ability to pay the loan. Furthermore, it appears that the gross income of the couple, which is all that was adduced at the hearing or found in the bankruptcy court's opinion, exceeds their expenses. This lends support to Mrs. Dillon's conclusion that they could make some payment on the loan.

Even assuming that the bankruptcy court's findings are not clearly erroneous, the first part of *Brunner* is still not satisfied. Adding the total expenses that the bankruptcy court found and comparing them to the undisputed evidence on income, it is clear that the Dillon's income exceeds their expenses. The bankruptcy court found $1445 per month in total expenses. Total gross income, even using the clearly erroneous figure for Mr. Dillon's income, is $1677 per month. When compared to other cases, these facts hardly establish an *undue* hardship. *See, e.g., Ballard*, 60 B.R. at 675 (holding that no undue hardship existed where debtor's expenses exceeded income by over $400); *In re Love*, 33 B.R. 753, 754 (Bankr.E.D.Va.1983) (holding no undue hardship where monthly expenses consumed all but $30 of monthly income). *In re Wardlow*, 167 B.R. 148 (Bankr. W.D.Mo.1993), is particularly appropriate.

**3.** At first blush, the first step in the *Brunner* test would appear to be inconsistent with the lower court's previously stated opinion in *Ballard*. Therein, the bankruptcy court opined that undue hardship is not based upon a present inability to pay. *Ballard*, 60 B.R. at 674. This statement is true to the extent that an additional showing is required to prove undue hardship. *Brunner* phrases that showing as requiring evidence that the state of affairs is likely to continue. *Ballard* phrases that showing as requiring a "certainty of hopelessness" that future payments cannot be made. *Id.* at 675. This is not to say, however, that present inability to pay is a threshold prerequisite, as explained in *Roberson*.

That case involved a debtor who listed monthly expenses, in addition to food, transportation, clothing and shelter, of $100 for telephone, $36.50 for cable television, $75 for recreation, and $75 for miscellaneous expense. *Id.* at 151. The debt involved in *Wardlow* exceeded $25,000. In applying the *Brunner* standard, the court held that the first prong was not satisfied. The court found that the debtors were maintaining more than a minimal standard of living. *Id.* Similarly, the debtors here have chosen to retain their cable television subscription and reaffirmed their debt to a furniture company following their bankruptcy. The debt in this case is much smaller.

Assuming, *arguendo,* that the first prong can be deemed satisfied, it is beyond doubt that the second prong of *Brunner* is not satisfied. The second step examines whether the debtor's financial condition will persist. *Roberson,* 999 F.2d at 1135–36. The evidence clearly demonstrates the financial problems will not persist. Mrs. Dillon expects a raise. Mr. Dillon expects to move to "full-time" status. Both of their incomes have increased since the bankruptcy filing. If the testimony of the $50 to $75 per month was not intended to reveal a present ability to pay, the follow-up question clearly indicates that in the future, such payments could be made. *See* Tr. at 12; *see also id.* at 1137 (finding that second part of test not satisfied where debtor could not show any barrier that would prevent repayment of loan for several years).[4] There is no "certainty of hopelessness" that future payments could not be made. *Ballard,* 60 B.R. at 675.

I do not reach the third part of *Brunner* involving the question of good faith. First, this argument was apparently not advanced below. Second, assuming the record would support a finding of good faith, the failure of the appellees to satisfy the first two prongs of *Brunner* prevent it from obtaining a discharge by proving the third prong of *Brunner. See Roberson,* 999 F.2d at 1136.

### IV. Conclusion.

For the forgoing reasons, I believe that the lower court erred in discharging the student loan in question. Accordingly, I reverse the decision of U.S. Bankruptcy Judge Pearson and remand with instructions to deny the appellees the discharge of the student loan. I do not, however, take any position on the question of whether the bankruptcy court may, on remand, hold the debtor responsible only for the principal or establish a different repayment schedule than may already exist. *Compare Ballard,* 60 B.R. at 675 (citing cases that appear to allow such practice), *with Wardlow,* 167 B.R. at 152–53 (holding that bankruptcy courts have no such power). Because the lower court discharged the debt in question, this issue was not presented.

An appropriate order will be entered.

---

4. The appellee relies on *In re Cheesman,* 25 F.3d 356 (6th Cir.1994), *cert. denied sub nom., Tennessee Student Assistance Corp. v. Cheesman,* — U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). That court held in favor of the debtor, finding that an undue hardship would exist. The court did not adopt any specific test, but held that under either the *Brunner* or *Andrews* tests the student loan would be discharged. *Id.* at 359. I agree with the appellant's distinction of this case. Despite a frugal lifestyle, the debtors in *Cheesman* still had a $400 per month deficit. They owed much more than the debtors here. One of their children required special medical attention. The children in this case are healthy.