**In re Geoffrey Ifenay EKENASI, Debtor.**

**The Education Resources Institute, and Pennsylvania Higher Education Assistance Agency, Appellants,**

v.

**Geoffrey Ifenay Ekenasi, Appellee.**

Civ.A. No. 2:01–0185.
Bankruptcy No. 97–21233.
Adversary No. 98–0051.

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 7, 2002.

Andrew S. Nason, Pepper, Nason & Hayes, Charleston, WV, for Appellee.

Steven L. Thomas, Kay Casto & Chaney PLLC, Charleston, WV, for Appellants.

Debra A. Wertman, Office of the United States Trustee, Charleston, WV, Interested Party.

### MEMORANDUM OPINION AND OR-DER AFFIRMING THE APPEAL-ED ORDER OF THE BANKRUPT-CY COURT

HADEN, Chief Judge.

Pending is an appeal from a January 9, 2001 Order of the Bankruptcy Court, the Honorable Ronald G. Pearson presiding. The Order discharged the student loan obligations of Appellee Geoffrey Ifenay Ekenasi. The Court AFFIRMS Judge Pearson's Order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In August 1997, Geoffrey Ekenasi filed a Chapter 13 petition. His resulting sixty (60) month plan was confirmed in February 1998. Ekenasi will pay $300.00 per month under the plan through September 2002. In May 1998, Ekenasi instituted this adversary proceeding to obtain an undue hardship discharge of the loans under

11 U.S.C. § 523(a)(8).[1] Judge Pearson denied the parties' cross motions for summary judgment.

At trial Ekenasi testified at length concerning his financial condition. The transcript reveals Ekenasi is a fifty-year-old native of Nigeria. He earned his undergraduate degree there and worked for five years as a civil servant. He later worked in public relations for the government, but was discharged in 1983 as a result of a military coup.

Ekenasi emigrated to the United States to escape his family's financial distress. Job opportunities in his native country did not permit him to provide for his children adequately. In this country, he first worked in the shipping department of a utensil factory. He next worked as a taxi driver for four years, although he earned little money. During his fourth year, a passenger suggested he should pursue a different course. The individual encouraged Ekenasi to apply for a government scholarship or loan for further schooling.

Ekenasi took the advice to heart and was admitted to the West Virginia University College of Law. During law school, his son and daughter lived with him, while his remaining children lived in Nigeria. Ekenasi completed law school in three years and, in the process, accumulated $100,000.00 in student loans. He failed the bar exam for two years, ultimately passing in 1997. During most of that time, he was employed by the West Virginia Department of Tax and Revenue. He made approximately $24,000.00 a year. While at the Department of Tax and Revenue, Ekenasi testified to the financial hardship that ultimately led to his Chapter 13 filing:

> I was in a very, very terrible shape financially. I couldn't feed my children, to the point Franklin [his son] said once to me, want somebody to adopt him, because of what we were going through.
>
> I was calling these people, the students loan people, begging them to allow me to pay little by little. They said there is limits where you can pay, can't pay less, and I have some of the payment and I took it ... and I brought to New York to give them money, to make sure that I don't default, but they won't work with me.
>
> I begged them. I cried on the phone, I said, work with me, I will pay, even if I pay until I die. I am ready to pay. They said, no.

Trans. at 12–13. At the time of his Chapter 13 filing, Ekenasi had six of his children living with him, with three others still residing in Nigeria.[2]

Ekenasi has been employed with the West Virginia Bureau of Child Support Enforcement (BCSE) for the past two years. He works in Lincoln, Boone, and Logan counties. He testified he moved to

---

1. Section 523(a)(8) provides:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]
   *Id.*

2. The six children in the United States were a result of the union with ex-wife Celestina Ekenasi who travels between the United States and Nigeria. The three children remaining in Nigeria were the result of his union with a woman named Veronica who remains in Nigeria.

the southern counties from Charleston because it shortened his travel time and the cost of living was cheaper. When he started with the BCSE, he was paid $36,000.00 per year. He now makes $42,000.00 annually, a salary level that should remain constant for some time.

Ekenasi has tried to secure better work. Even at his higher salary rate, he claimed continuing difficulty feeding his children. Regarding transportation, he drove a Nissan Sentra until it ceased running, which prevented him from getting to work. Through the kindness of others, Ekenasi secured a loan to purchase a 1993 Honda, although it too was "not in great shape[.]" Trans. at 19.

At the time of trial, the oldest child living with Ekenasi was 20. Ekenasi testified, however, the young man was not able to support himself and only recently was able to recite his own phone number. That son presently works at a fast food restaurant, cannot support himself, and does not contribute any money to the household. The next oldest child was 18 and attending Southern Community College in Logan. The remaining four children were attending public school.

Ekenasi's budget lists $950.00 for food each month. The family does not eat out. Ekenasi also does grocery shopping at the least expensive grocery store. His clothing budget is $50.00 per month, a sum he stretches by shopping at the Salvation Army thrift store. The coat Ekenasi wore to trial cost $5.00, his shirt $2.00, and his tie just $1.00. Regarding utilities, Ekenasi noted his house is big, old, and not energy efficient. He does not feel moving is an option, however, because the landlord, a church, readily works with him on rent arrearages.

Regarding his Chapter 13 payments, which terminate in 2002, Ekenasi stated "I make sure that is Number 1, every month." Trans. at 23. While Ekenasi basically has made his Chapter 13 payment faithfully, he is behind on his rent. As suggested previously, he has requested and been forgiven, some rent payments by his church. He was behind also on his utility bills and further remains under Nigerian court Order for child support in the amount of $900.00 per month for his three children residing there. He testified to paying no more than $300.00 per month on that obligation.[3] Ekenasi receives no reciprocal support from his ex-wife here because, in his words, she "thinks that, to help the children, [is] to help me." Trans. at 28.

Ekenasi exhibited some medical bills at trial. He suffers from hypertension and an enlarged prostate that has required surgery. The conditions "take [him] to the hospital frequently." Trans. at 25. Ekenasi's daughter also receives psychiatric treatment and his two youngest children "have been in more hospital than the rest." Trans. at 49. He also noted over-the-counter medication is "very expensive" at $6.00 and that treating his kids for a cold can run to $15.00. After making his Chapter 13 and car payments, he claims nothing is left over. When asked whether he had any personal property of significant worth, he replied "No, nothing of value in this world." Trans. at 47.

On cross-examination, the Pennsylvania Higher Education Assistance Agency and The Education Resources Institute (PHEAA/TERI) noted Ekenasi's tax returns revealed he claimed as dependents only as many as three children each year

---

**3.** The Order terminates when the children leave college. The children range in age from 9 to 21.

for tax years 1997 through 1999. Ekenasi testified to his belief, however, he could claim only two or three dependents.[4] It also appears Ekenasi has made no attempt to secure a support order against his ex-wife. He testified, however, to her transient status, traveling between Nigeria and the United States, and her employment in the fast food industry. He also believed "I have not tried it, because I know I will not get anything." Trans. at 36. PHEAA/TERI also noted the absence of documentation Ekenasi in fact was making payments pursuant to the Nigerian court Order. Ekenasi admitted, however, he was "not able to pay regular" and that he was behind. Trans. at 38.[5]

Ekenasi has health insurance. Nevertheless, he testified one child was in the hospital that very day and that it would not be covered 100% even if he met his deductible.

Prior to filing for protection, Ekenasi obtained help from family members to pay his loan obligations. He also visited a financial counselor for help. Commenting on Ekenasi's prospects, Judge Pearson stated from the bench:

> And it is *really clear to me* that, in the course of this Chapter 13 case, if you are not able to discharge this obligation, substantial obligation, on student loans, that you will have a substantial roadblock in your way that will make it unlikely, not only that you won't have a fresh start, but that you are not going to

be able to provide, in any reasonable way, for the medical, for the nurturing needs, the necessities of the children . . . .

Trans. 65 (emphasis added). Accordingly, Judge Pearson entered findings of fact and conclusions of law granting the undue hardship discharge. PHEAA/TERI filed the instant appeal.

## II.   DISCUSSION

### A.   Standard of Review

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). Our Court of Appeals recently restated the applicable standard of review in *Kielisch v. Educational Credit Management Corp. (In re Kielisch)*, 258 F.3d 315 (4th Cir.2001):

> "We review the district court's decision by applying the same standard of review that it applied to the bankruptcy court's decision. That is, we review findings of fact for clear error and conclusions of law de novo." *In re Deutchman*, 192 F.3d 457, 459 (4th Cir.1999) (internal citations omitted).

*Id.* at 319; *see also In re Mountain Laurel Resources Co.*, 258 B.R. 652, 656 (S.D.W.Va.2001).

### B.   Assignments of Error

PHEAA/TERI assert roughly six assignments of error. The first two challenge certain factual findings by Judge Pearson. First, PHEAA/TERI challenge Judge Pearson's finding "Debtor is subject

---

4. It appears Ekenasi confused the rules for claiming exemptions for tax purposes and for claiming entitlement to the earned income tax credit. *See* trans. at 29–30. Alternatively, it appears he would permit one of his ex-wives to use any number of the children for deduction purposes as long as he could take two for earned income credit purposes. *See* trans. 32 ("So, I tell her when she comes with her trouble, I tell her, take anyone she want to

take. I just want two, due to the maximum of the income credit.")

5. The documentation offered by Ekenasi was in the form of several Western Union and money order receipts to his family members. Ekenasi made the transfers in this fashion because he believed his ex-wife would not accurately recount the payments or not otherwise use the money for support of the children.

to a support order requiring him to pay $900.00 a month support [in Nigeria]." *Ekenasi v. The Education Resources Institute*, A.P. No. 98–0051, slip op. at 2 (Bankr.S.D.W.Va. Jan. 9, 2001). PHEAA/TERI assert Judge Pearson clearly erred in considering the support Order when the "evidence plainly shows that the debtor is not making payments pursuant to this Order." App'ants' br. at 1. Second, PHEAA/TERI challenge Judge Pearson's finding Ekenasi has six children totally dependent upon him for support when (1) his income tax returns claim at most three dependents, and (2) three children reached the age of majority by trial time.

The Court notes factual findings are subject to substantial deference. Our Court of Appeals has noted in unpublished decisions that " 'To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.' " *Bellsouth Telesensor v. Information Sys. & Networks Corp.*, No. 92–2355, 1995 WL 520978, at *5 n. 6 (4th Cir. Sept. 5, 1995)(quoting *Parts & Elec. Motors v. Sterling Elec.*, 866 F.2d 228, 233 (7th Cir. 1988), *cert. denied*, 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989)).

■ The two challenged findings pass the smell test easily under this restrictive standard. Judge Pearson correctly stated the support Order "requir[es]" a $900.00 monthly payment. Whether Ekenasi pays the monthly sum is beside the point. He remains under a legal obligation to do so. It is thus plainly appropriate to consider the obligation. The challenge to the number of dependents also fails. The record reflects Ekenasi's confusion concerning how many dependents he could lawfully claim for tax purposes.[6] Judge Pearson did not err in finding, as a practical matter, Ekenasi shoulders the burden to feed and clothe those offspring residing with him. The record is basically undisputed on that point.[7] Further, it is sheer speculation to posit "the monthly expenses [Ekenasi] is paying to support these children will be decreasing over the potential repayment period of his student loan obligations." App'ant's Br. at 16.

The next four errors, some of which are mixed questions of law and fact, are reviewed *de novo*. Several of these alleged errors practically are subsumed under the larger question of whether Judge Pearson properly applied the undue hardship test as discussed in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d

6. In the alternative, PHEAA/TERI assert Ekenasi could substantially raise his take home pay by increasing the number of exemptions claimed on his W–4 form and also filing amended returns to claim all of his children as dependents. There is little evidence in the record to support these assertions. Even if correct, however, they do not upset Judge Pearson's otherwise careful analysis under the applicable factors discussed *infra*.

7. In one sentence on page 15 of its opening brief PHEAA/TERI also challenged Ekenasi's budget reflecting a $3600.00 per year line item for medical care and prescription drugs. PHEAA/TERI compare this with Ekenasi's testimony "his health insurance provides a ... deductible ... per year ... of $1400 for

seven persons and that his monthly medical expenses were $70.00 for various medications for a total of $840.00 per year." App'ant's Br. at 15. Judge Pearson's finding, however, merely stated "Debtor has insurance through his place of employment, but that both he and his children have certain reoccurring medical expenses which are uncovered and impose a burden on the income of the Debtor." *Ekenasi*, slip op. at 2. This finding can be keyed directly to responsive, re-direct testimony by Ekenasi his insurance does not pay 100% of his family's medical bills even after he meets his deductible. Trans. at 53. Judge Pearson's finding is thus directly supported by the record.

395 (2nd Cir.1987), and as refined by Judge Pearson's earlier decision in *Blankenship v. Diversified Collection Service,* A.P. No. 96–0051 (Bankr.S.D.W.Va. Nov. 17, 1999). In *Blankenship,* Judge Pearson held:

> This Court has previously set forth the test adopted in this jurisdiction for Chapter 7 dischargeability determinations under § 523(a)(8), but has not officially adopted any procedures or tests with regard to Chapter 13 cases. Chapter 7 dischargeability determinations are made according to the standards set forth in *Brunner* [ ] which are: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself/himself and any dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Id.*

As it relates to the first prong of the test, the Court finds *In re Bryant,* 72 B.R. 913 (Bankr.E.D.Pa.1987) instructive, where Judge David Scholl determined that official poverty guidelines as published by the U.S. Department of Health and Human Services should be followed to achieve a more uniform result in student loan dischargeability cases. This Court finds that a debtor whose family income falls below the established poverty level presumptively

meets the first prong of the *Brunner* test.

The second prong of the *Brunner* test requires the existence of circumstances suggesting "the certainty of hopelessness" which prevent future repayment of student loans. *Walcott v. USA Funds, Inc. (In re Walcott),* 185 B.R. 721, 724 (Bankr.E.D.N.C.1995), *citing In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993). Such circumstances have included illness, incapacity and other extenuating circumstances as they relate to the debtor or the debtor's family. *See generally 3 Collier on Bankruptcy,* ¶ 523.18 (15th ed).

The third prong of the *Brunner* test requires that [ ]undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from "factors beyond reasonable control." *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 305 (3rd Cir. 1995) (citations omitted). Defendants are advised to be responsible when litigating dischargeability of these debts, as Rule 9011 sanctions may be imposed if the Court finds a defendant litigated when the debtor was clearly entitled to discharge.

This Court hereby expressly adopts the *Brunner* test as set forth above for Chapter 13 cases, with some additional provisions....

*Id.* at 3–4.[8]

■ The first claimed error under this second category is Judge Pearson's alleged

---

**8.** Faced with conflicting precedent, Judge Pearson adopted the *Brunner* test, along with additional factors. His approach appears prescient. While our Court of Appeals has not yet definitively resolved the issue, it appears several months ago to have favorably mentioned *Brunner,* along with other relevant factors:

> The Debtors did not request an undue hardship determination. Although § 523(a)(8) provides that undue hardship is an exception to the nondischargeability of student loan debt, the Bankruptcy Code does not define the term, nor does it set forth standards for its application. *See In re Rifino,* 245 F.3d 1083, 1087 (9th Cir.2001) (stating

incorrect conclusion Ekenasi maximizes his income and minimizes his expenses. The second alleged error is Judge Pearson's conclusion the 60 month Chapter 13 plan payments of $300.00 per month represent Ekenasi's "best effort" to repay the loans. The record reflects Ekenasi (1) is fifty years of age with two significant medical conditions, (2) drives a temperamental 1993 model vehicle, (3) has no reasonable prospects for increasing his income in the foreseeable future, (4) has accruing, non-dischargeable child support obligations,[9] (5) attempts to buy the least expensive food, (6) shops for clothing at second hand stores, (7) negotiates with his landlord to accept partial rent payments, (8) has difficulty with the English language, and (9) is the sole means of support for his six children, given his ex-wife's transient status. Ekenasi's circumstances and dire financial straits· plainly support Judge Pearson's findings and conclusions. Neither alleged error is meritorious.

█ The next alleged errors challenge (1) the decision to address the dischargeability question during the life of the Chapter 13 plan rather than at the plan's conclusion, and (2) the putative failure to consider a partial, rather than a complete, discharge. Judge Pearson's thorough *Blankenship* opinion addresses the first issue. The Court adopts Judge Pearson's well-reasoned analysis rejecting the argument. *See Blankenship,* slip op. at 6–8 (concluding, *inter alia,* "Requiring a debtor to wait until completion of a 36–60 month plan before considering a hardship discharge would not promote Congress' goal of encouraging debtors to file Chapter 13 instead of Chapter 7, and would impose on Chapter 13 debtors a different standard for obtaining a 'fresh start.' ").

Regarding the partial discharge issue, Judge Pearson knew partial discharge was an available option; he wrote about the issue extensively in *Blankenship,* following the fork in a split of authority permitting such discharges. *Id.* at 9–13. In actuality, PHEAA/TERI challenge the failure to *grant,* not *consider,* a partial discharge. As noted *supra,* however, Judge Pearson had ample basis in the record for concluding a complete discharge was warranted under the circumstances. It was not error to choose that course.

After considering all of the alleged errors, the Court concludes there is no basis to disturb the Order appealed from.

---

that "undue hardship" is not defined in the Bankruptcy Code). Some courts, however, have held that a discharge based on undue hardship requires a debtor to show the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting *In re Brunner,* 46 B.R. 752, 753 (Bankr.S.D.N.Y.1985)); *see also In re Hornsby,* 144 F.3d 433, 437 (6th Cir.1998) (*considering the same factors, along with the amount of debt, the rate of interest, and the*

*debtor's claimed expenses and current standard of living*).
*In re Kielisch,* 258 F.3d 315, 319 n. 4·(4th Cir.2001)(emphasis added).

9. PHEAA/TERI assert "If [Ekenasi] is able to pay $300.00 per month for 60 months, which student loan payments make up at least half of these monthly payments, clearly he should be required to demonstrate why he is unable to sustain this payment upon completion of his Chapter 13 plan prior to obtaining a hardship discharge." App'ant's Br. at 20. Judge Pearson was cognizant of the accruing, and continuing, child support obligations under the Nigerian court Order. That obligation alone, which Ekenasi only sporadically and partially complies with presently, cuts against PHEAA/TERI's speculative assertion.

### III. CONCLUSION

Based on the foregoing, the Court **AFFIRMS** Judge Pearson's Order.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to the Honorable Ronald G. Pearson and counsel of record and to publish a copy as well on Court's website at http://www.wvsd.uscourts.gov.