Shirley Houser MORT, Debtor.

Tennessee Student Assistance Corporation, Appellant,

v.

Shirley Houser Mort, Appellee.

No. 1:01CV00125.

United States District Court, W.D. Virginia, Abingdon Division.

Jan. 18, 2002.

**182**

Mark L. Esposito, Penn, Stuart & Eskridge, P.C., Bristol, Virginia, for appellant.

Maria Timoney, Southwest Virginia Legal Aid Society, Inc., Marion, Virginia, for appellee.

## OPINION

JONES, District Judge.

The question in this appeal is whether the bankruptcy court had the power to partially discharge the debtor's student loan indebtedness, even though the debtor had not met the applicable test showing that the debt would impose an undue hardship on her. I find that the bankruptcy court erred in partially discharging the debt and thus reverse.

### I

The appellee, Shirley Houser Mort, is a Chapter 7 debtor in the bankruptcy court below. She filed a complaint in that proceeding against the appellant, Tennessee Student Assistance Corporation ("TSAC"), seeking a determination that her educational loan was dischargable under § 523(a)(8) of the Bankruptcy Code, which requires a finding that the loan, if not discharged, will "impose an undue hardship on the debtor and the debtor's dependents." [1] TSAC denied that the loan was dischargeable on this basis and filed a counterclaim seeking judgment for the unpaid loan amount.

The bankruptcy court (Stone, J.) held an evidentiary hearing on April 18, 2001, and issued an opinion and order on August 7, 2001, partially discharging the debt. TSAC thereafter noted a timely appeal to this court.[2] The parties have briefed the appeal and it is ripe for decision.[3] I review the bankruptcy court's conclusions of law de novo, but I must accept that court's determination of facts unless clearly erroneous.[4]

At the time of hearing below, the debtor was forty-nine years old. She has a master's degree in management and is employed as a claims examiner for an insurance company, earning approximately $19,000 per year. She is separated from

1. 11 U.S.C.A. § 523(a)(8) (West Supp.2001).

2. This court has jurisdiction pursuant to 28 U.S.C.A. § 158(a)(1) (West Supp.2001).

3. I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

4. *See* Fed.R.Bankr.P. 8013.

her husband, and lives alone in a three-bedroom home owned jointly with her husband and recently appraised at a value of $90,000.[5] Her eight-year-old granddaughter spends several days a week with her, but she does not claim her as a dependant.

The student loan that is the subject of this appeal was obtained by the debtor between 1989 through 1992 and allowed her to obtain an undergraduate degree from Tusculum College. She filed a Chapter 7 bankruptcy petition in 1993, but could not obtain a discharge of her educational loan debt because at that time the statute required a loan repayment period of seven years before such a loan was eligible for discharge. In 1998, Congress eliminated the seven-year exception.[6]

The debtor has never made any voluntary payments on her student loan,[7] and the parties stipulated that the outstanding balance at the time she filed the current Chapter 7 petition was $18,263.40. The Income Contingent Repayment Plan administered by the Department of Education to assist low-income debtors burdened by student loans [8] would allow Mrs. Mort to make payments of $142.97 per month based on her current income, but she has rejected that program as unaffordable to her.[9] The total mortgage payment on her home is $700 per month, of which she pays $400 and her husband pays the balance, but she does not want to give up the house and live in a smaller apartment.[10]

The bankruptcy court considered the debtor's request for discharge under the test established in *Brunner v. New York State Higher Education Services Corp.*[11] According to *Brunner,* in order to show "undue hardship" a debtor must prove: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[12]

The bankruptcy court found that the debtor had failed to meet all of the prongs of this test, and in particular had failed to show that she "ha[d] ever really made a sincere effort to pay ... or that she has ever recognized or accepted the principle that she ought to devote her financial resources ... to satisfying what she's legally obligated to do before utilizing them for those matters which have first call upon her heart...." [13]

In spite of its factual findings, the bankruptcy court held that it had the general equitable power under § 105 of the Bankruptcy Code to partially discharge the debt because it found that Mrs. Mort did not have the present ability to pay the entire debt, including interest and collection costs. Accordingly, the bankruptcy court discharged all interest through April 15, 2004, as well as all attorneys' fees, ex-

5. *See* Tr. at 24.

6. *See* Higher Education Amendments of 1998, Pub.L. No. 105–244 § 971(a), 112 Stat. 1581 (1998).

7. *See* Tr. at 12, 76–77.

8. *See* 34 C.F.R. § 685.209 (2001).

9. *See* Tr. at 32.

10. *See* Tr. at 50.

11. 831 F.2d 395 (2d Cir.1987).

12. *Id.* at 396.

13. Op. at 10.

penses and collection costs. In addition, the bankruptcy court fixed monthly payment amounts, beginning at sixty dollars per month, and increasing over time, until the debtor reaches the age of sixty-five, at which time her obligation to make monthly payments shall cease. Finally, the bankruptcy court allowed the debtor to petition the court to reopen the proceedings if future circumstances created an undue hardship in regard to the obligations imposed by the court's order.

## II

In this appeal, TSAC contends that the bankruptcy court erred in partially discharging the loan debt in reliance on § 105.

■ Section 523(a)(8) provides that a discharge otherwise granted to a debtor does not discharge the debtor from any debt for an educational loan "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants." [14] "Undue hardship" as used in § 523(a)(8) was not further defined by Congress and there has been much litigation over its proper meaning. The statutory language certainly means more than the normal financial hardship present in any debtor's life. [15] The *Brunner* three-part test appears to be now widely accepted, although there are other formulations and variations, including a "fact-sensitive"

case-by-case approach based on a totality of the circumstances. [16] The Fourth Circuit has yet to adopt a position.

The bankruptcy court determined that Mrs. Mort had not met the *Brunner* requirements of undue hardship. Nevertheless, it held that it had the power under § 105 to equitably revise the debt so as to make it affordable to the debtor. Section 105 simply provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." [17]

■ While § 105 has been construed to give "broad authority to modify creditor-debtor relationships," [18] it does not allow the bankruptcy court to ignore express statutory requirements otherwise applicable. [19] Section 523 of the Bankruptcy Code contains a laundry list of debts—including taxes, child support, alimony, and student loans—that are exempted from discharge and the "fresh start" otherwise provided by the bankruptcy process. The courts are not free to disregard these exemptions in individual cases, since they represent clear policy decisions by Congress that certain debts ought not to be discharged, at least without express conditions having been met.

■ It is true that many courts have held that § 523(a)(8) permits the partial discharge of a student loan debt, although

---

14.  11 U.S.C.A. § 523(a)(8).

15.  *See Jones v. Nat'l Payment Ctr. (In re Jones)*, 242 B.R. 321, 325 (Bankr.E.D.Va. 1998) (undue hardship means "more than unpleasantness associated with repayment of a just debt.").

16.  *See* Scott Pashman, Note, *Discharge of Student Loan Debt Under 11 U.S.C. § 523(A)(8): Reassessing "Undue Hardship" After the Elimination of the Seven–Year Exception,* 44 N.Y.L.Sch.L.Rev. 605, 609–16 (2001) (reviewing cases).

17.  11 U.S.C.A. § 105(a) (West 1993).

18.  *United States v. Energy Res. Co.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

19.  *See United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (Section 105 does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.") (internal citations omitted).

there is authority to the contrary.[20] I agree that the plain language of the statute does not require an "all or nothing" approach to the discharge of student loans and that the clear legislative intent of the exemption supports the power to grant a partial discharge of such a debt.[21]

 On the other hand, the power to grant a partial discharge of the debt does not allow the mandate of the educational loan exemption to be disregarded. The authority to grant the discharge of a student loan debt—whether of the whole debt or only a portion thereof—must be conditioned upon a finding of undue hardship. Otherwise, § 523(a)(8) would be without practical effect. If § 105 allowed a discharge without meeting the test of undue hardship, Congress' effort to make it harder to walk away from student loans would be thwarted. A "partial discharge" under § 105 might include ninety percent of the entire debt, or any other suitable portion, so long as the bankruptcy court found it "equitable." Such a rule would make the law more unpredictable and results as among debtors more inconsistent than at present.[22] The better approach is to permit a partial discharge only to the extent that it would be an undue hardship for that part of the loan obligation not to be discharged.[23]

 Most definitions of undue hardship in the context of § 523(a)(8) encompass a good faith inquiry, in which the court "looks to see whether the debtor has tried to repay his student loan obligations since they were incurred, has made efforts to renegotiate the loans, to obtain deferments, and to minimize expenses and increase income."[24]

 In this case, the bankruptcy court's determination that the debtor did not exhibit good faith is certainly supported by the record. Although her failure to make payments on the loan does not on its own show lack of good faith,[25] the debtor's refusal to minimize her expenses and maximize her income, described in detail in the bankruptcy court's opinion, preclude a hardship discharge of any portion of the loan. While Mrs. Mort's circumstances have been difficult, it is pellucid that she has never attempted to reconcile her economic life to the obligations of this loan.

The bankruptcy court's factual findings are correct, but in the absence of good faith, it was error to discharge any portion of the student loan debt. Accordingly, it is necessary to reverse the bankruptcy court's decision, and remand the case with directions to deny the relief sought by the debtor and grant the appellant's counterclaim.

A separate judgment consistent with this opinion is being entered herewith.

**20.** *Compare Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 440 (6th Cir.1998) (partial discharge of student loan permitted), *with United Student Aid Funds Inc. v. Taylor (In re Taylor),* 223 B.R. 747, 753 (9th Cir. BAP 1998) (holding that partial discharges are contrary to plain language of statute).

**21.** *See Kapinos v. Graduate Loan Ctr. (In re Kapinos),* 243 B.R. 271, 275–76 (W.D.Va. 2000).

**22.** *See* Robert B. Milligan, Comment, *Putting an End to Judicial Lawmaking: Abolishing the Undue Hardship Exception for Student Loans in Bankruptcy,* 34 U.C. Davis L.Rev. 221, 251–53 (2000).

**23.** *See East v. Educ. Credit Mgmt. Corp. (In re East),* 270 B.R. 485, 493 (Bankr.E.D.Cal. 2001).

**24.** *Id.* at 495.

**25.** *See id.*