## EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Appellant,

v.

### James Allen BUCHANAN and Melissa Sharon Buchanan, Appellees.

#### No. CIV.A.1:01CV177.

United States District Court,
N.D. West Virginia.

March 29, 2002.

Howard G. Salisbury, Jr., Steven L. Thomas, Kay, Casto & Chaney, PLLC, Charleston, WV, for Appellant.

Michael C. Clagett, Fairmont, WV, for Appellees.

## MEMORANDUM AND OPINION ORDER

KEELEY, Chief Judge.

This case is before the Court on an appeal from a ruling of the United States Bankruptcy Court for the Northern District of West Virginia. The matter is fully briefed and ready for the Court's consideration. The Court must determine:

(1) Whether interest on student loan debt may be discharged in a bankruptcy proceeding absent a finding of undue hardship; and

(2) Whether allowing interest to accrue on the Appellee's student loan debt during the pendency of the Appellee's Chapter 13 reorganization plan would subject the Appellee to undue hardship.

The Court finds that student loan debt, including interest on the debt, must pass unaffected through a Chapter 13 proceeding unless failing to discharge interest on the loan would subject the debtor to undue hardship. Further, the Court finds that the Bankruptcy Court erred in concluding that it would be an undue hardship to allow interest to accrue on the Appellee's student loan debt during the pendency of the Appellee's Chapter 13 proceeding. The Court, therefore, **REVERSES** the judgment of the Bankruptcy Court and **DISMISSES** this appeal.

## I. STATEMENT OF THE CASE

The Appellees, James Buchanan and Melissa Buchanan (Mr. and Mrs. Buchanan or the Buchanans), filed their Chapter 13 Bankruptcy case in the Northern District of West Virginia on April 25, 2000. After filing their original Chapter 13 Plan, the Buchanans realized their initial reorganization plan was too ambitious. As a result, they filed an Amended Chapter 13 Plan on July 18, 2000. The Amended Plan, confirmed with the Chapter 13 Trustee on January 31, 2001, paid a 22% distribution to the Buchanans' unsecured creditors. USA Group Loan Services Inc. was among the unsecured creditors filing claims from the Buchanans' Chapter 13 Trustee. USA Group filed two claims indicating the Buchanans owed it a total of $11,293.68.

Immediately after the Buchanans filed their amended Chapter 13 Plan, Mrs. Buchanan filed a dischargeability suit against USA Group, following which USA Group assigned its interest in the loan to Educational Credit Management Corporation. In her original complaint, Mrs. Buchanan sought to have her entire student loan discharged because, as she alleged, excepting such debt from discharge under 11 U.S.C. § 523(a)(8) and 11 U.S.C. § 1328(a)(2) would subject her and her dependents to undue hardship.[1] Later, at

---

1. Under 11 U.S.C. § 523(a)(8), student loan debt can be discharged in a bankruptcy proceeding only under circumstances where excepting the student loan from discharge

trial, she narrowed her request for relief, seeking in effect to freeze her student loan debt during the pendency of the Chapter 13 proceeding and to prevent interest from accruing on the student loan during the five-year period she and her husband would be making Chapter 13 Plan payments.

On October 10, 2001, the Bankruptcy Court granted Mrs. Buchanan's motion to freeze her student loan obligation at the Proof of Claim amount ($11,352.73) during the pendency of her Chapter 13 Plan. Although the Bankruptcy Court did not expressly find that the Buchanans would be subjected to undue hardship if Mrs. Buchanan's student loan debt was excepted from discharge, it held that discharging the interest that would accrue on the student loan debt during the pendency of the Chapter 13 proceeding would be "creative," would not be "unfair," and would be "justified by the circumstances."

Educational Credit Management Corporation appealed that decision, contending that because 1) student loan debt can be discharged only when necessary to avoid the imposition of undue hardship upon a debtor or her dependants, and 2) interest could accrue on Mrs Buchanan's student loan debt during the pendency of her Chapter 13 Plan without subjecting her and her dependents to undue hardship, the Bankruptcy Court erred when it froze the interest on her student loan debt.

The Buchanans offer four reasons why they should not be required to pay interest on Mrs. Buchanan's student loan debt. First, their earning capacity is not likely to increase in the future; second, they live in rural Marion County where no one is "living high on the hog;" third, their vehicle will have to be replaced at the end of the Chapter 13 reorganization period; and,

fourth, Mr. Buchanan intends to continue to support his daughter from his first marriage even after she reaches age 18. In addition, the Buchanans argue that the income of the non-debtor spouse cannot be considered when determining the ability of the debtor spouse to repay her loans. Finally, they contend that because the student loan funds were used to attend a "secretarial type school," rather than a "college or university," resulting in an education that is not benefitting Mrs. Buchanan, interest should not accrue on the student loan debt during the pendency of the Chapter 13 Plan.

## II. *FACTUAL BACKGROUND*

The Buchanans live in Rymer, Marion County, West Virginia, with two children, a son, age 7, and a daughter, age 10. Mr. Buchanan has another daughter, age 13, from a previous marriage, for whom he pays $150.00/month in support. He is a carpenter and is employed by Malibu Construction of Baltimore, Maryland. Mrs. Buchanan is employed as a telemarketing representative by AEGIS Communication of Fairmont, West Virginia. Their base pay rates are $15.00 and $6.75 per hour, respectively. Mr. Buchanan drives a vehicle provided by Malibu Construction; Mrs. Buchanan drives a 1998 Plymouth Breeze, which Mr. Buchanan does not believe will last throughout the duration of the Chapter 13 Plan. The Buchanans note that replacing the Plymouth Breeze upon completion of their Chapter 13 Plan would subject them to additional debt, and argue that it would be "physically impossible for them to make a [student loan] payment higher than the current payment of $132.93" while making payments towards a vehicle to replace the Plymouth Breeze.

The Bankruptcy Court examined the Buchanans' bills prior to ruling on the

would impose an undue hardship upon the debtor and her dependents.

dischargeability of Mrs. Buchanan's student loan debt. Although Mrs. Buchanan was incapable of filling out the worksheet accompanying her bank statements, that court's examination of the Buchanans' financial statements for the months of June through August 2001 indicated that, during the pendency of their Chapter 13 Plan, the Buchanans were spending more than $26.00/month on home internet service, more than $70.00 month on satellite television, approximately $20.00/month on home movies and take-out pizza, and incurred telephone bills as high as $80.00/month.

Through the Bankruptcy Court proceedings it was established that the Buchanans received tax refunds of approximately $1,320.00 and $600.00 during 1999 and 2000, respectively. The Bankruptcy Court, however, did not require them to pay this additional income as part of the Chapter 13 Plan. In addition, Educational Credit Management Corporation noted that Mr. Buchanan's oldest daughter would be 18 at the end of the Buchanans' Chapter 13 Plan and he would no longer be obligated to pay child support.

### III. *STANDARD OF REVIEW*

■■■ The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The District Court reviews the Bankruptcy Court's findings of fact for clear error; conclusions of law are subject to *de novo* review. *In re Deutchman,* 192 F.3d 457, 459 (4th Cir.1999). The issue of undue hardship is a question of law subject to *de novo* review. *State Education Assistance Authority v. Dillon,* 189 B.R. 382, 384 (W.D.Va.1995); *Ammirati v. Nellie Mae, Inc.,* 187 B.R. 902, 906 (D.S.C.1995). In reviewing the Bankruptcy Court's decision, the District Court may only consider evidence presented to the Bankruptcy Court and made part of the record. *In re Bartlett,* 92 B.R. 142, 143 (E.D.N.C.1988). The

debtor carries the burden of establishing that failing to discharge a portion of the loan would subject her to undue hardship. *Dillon,* 189 B.R. 382, 384.

### IV. *DISCUSSION*

As an initial matter, the Court must determine if interest on Mrs. Buchanan's student loan debt may be discharged absent a finding that excepting the interest from discharge would impose an undue hardship on her and her dependents. If interest on student loan debt may be discharged only upon a showing of undue hardship, then the Court must determine which undue hardship test to apply to the Buchanans' financial circumstances, and whether a finding of undue hardship is warranted.

#### A.

■■■ The plain language of 11 U.S.C. § 523(a)(8) provides that student loans are nondischargeable "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Although the language of the statute clearly indicates that student loan debt can be discharged in a bankruptcy proceeding only under circumstances where excepting the student loan from discharge would impose an undue hardship upon the debtor and her dependents, it has been unclear whether the statute also requires a showing of undue hardship to discharge the interest that would accrue on student loan debt during the pendency of a Chapter 13 Plan. A recent opinion of the Fourth Circuit Court of Appeals indicates that, absent a showing of undue hardship, a debtor's post-petition interest, like the debtor's principal student loan debt, is nondischargeable.

In *Kielisch v. Educational Credit Management Corporation,* 258 F.3d 315 (4th

Cir.2001), the Fourth Circuit discussed a common cause of confusion regarding the dischargeability of interest on student loan debt. Stating that the difference between claim and debt had been "conflated" by lower courts, it noted that, although 11 U.S.C.A. § 502 prohibits a creditor from filing *claims* for post-petition interest against the estate of a Chapter 13 debtor, "Section 502 does not 'freeze' the *debt* of the student loan debtor." *Id.* at 321 (emphasis added). Therefore, under § 502 interest continues to accrue on student loan debt during the pendency of bankruptcy proceedings, and "the debtor remains personally liable for the full amount of the student loan debt." *Id.* at 321. Accordingly, absent a showing of undue hardship, student loans are to "pass unaffected through the bankruptcy estate for purposes of the debtor's liability," *Id.*,[2] thereby preventing a debtor from using bankruptcy proceedings to discharge part of nondischargeable student loan debt in violation of 11 U.S.C.A. § 523(a)(8). *Id.* at 324.[3]

Because, absent undue hardship, interest on student loan debt continues to accrue throughout the pendency of any Chapter 13 bankruptcy proceedings, inter-

est on Mrs. Buchanan's student loan debt may be discharged only if failing to discharge the debt would subject her to undue hardship.

## B.

The next question to be addressed is whether excepting from discharge the interest on Mrs. Buchanan's student loan debt would subject her and her dependents to undue hardship. Before discharging a portion of Mrs. Buchanan's student loan debt, the Bankruptcy Court was required to find that failing to do so would subject her and her dependents to undue hardship, and that finding must have been supported by the facts.

▇▇▇ Although the proper meaning of undue hardship has been litigated often and is a contentious issue, the Fourth Circuit has yet to define the term. Nevertheless, the three-factor test of undue hardship adopted by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987), is widely accepted in numerous circuits and was referenced fa-

---

**2.** Importantly, although § 523(a)(8) contains an express exception to the nondischargeability of student loan debt upon a showing of undue hardship, the debtors in *Kielisch* had not requested an undue hardship determination. *Kielisch,* 258 F.3d at 319 n. 4.

**3.** In *Tennessee Student Assistance Corp. v. Mort,* 272 B.R. 181 (W.D.Va.2002), a case decided after *Kielisch,* the Western District of Virginia reversed a bankruptcy court's decision to discharge the interest on a debtor's student loan. The bankruptcy court had not found that requiring repayment of the entire student loan would impose undue hardship on the debtor, and the district court noted that "the power to grant a partial discharge of ... debt does not allow the mandate of the educational loan exemption to be disregarded. The authority to grant the discharge of a

student loan debt—*whether of the whole debt or only a portion thereof*—must be conditioned upon a finding of *undue hardship." Mort,* at 184 (emphasis added).

Most cases addressing the dischargeability of student loan debt have held that, absent a showing of undue hardship, post-petition interest on a nondischargeable student loan student loan is also nondischargeable. *See Lawrence v. Educational Credit Management Corp.,* 251 B.R. 467, 471 (E.D.Va.2000), rev'd sub nom. on other grounds by *In re Kielisch,* 258 F.3d 315 (4th Cir.2001); *Great Lakes Higher Education Corp. v. Pardee,* 218 B.R. 916 (9th Cir. BAP 1998); *Murphy v. Educational Credit Management Corp.,* 257 B.R. 72 (Bankr. N.D.Ala.2000); *In re Roa–Moreno,* 208 B.R. 488 (Bankr.C.D.Cal.1997); *In re Wagner,* 200 B.R. 160 (Bankr.N.D.Ohio 1996).

vorably by the Fourth Circuit in *Kielisch*.[4] This Court, therefore, will rely on its factors to determine if there is evidence of undue hardship here.

 To justify a finding of undue hardship under the *Brunner* test, the debtor must show

(1) that [she] cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that [she] has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. The first prong in the three-prong test is a threshold question; if it is not met, analysis of the second and third prongs is unnecessary. *Dillon*, 189 B.R. 382.

 To meet the first prong, Mrs. Buchanan must prove that, unless the post-petition interest on her student loan debt is discharged, she cannot maintain a minimal standard of living for herself or her dependents. Two sub-issues must be addressed to determine this.

First, according to Mrs. Buchanan, the Court may not consider the income of her husband when making the "minimum standard of living" determination. Holdings from other bankruptcy courts, however, suggest the income of the non-debtor spouse is relevant to determining if the debtor and her dependents would be subjected to undue hardship. *Dillon*, 189

B.R. 382; *White v. Sallie Mae*, 243 B.R. 498 (N.D.Ala.1999).

Second, Mrs. Buchanan argues that a portion of her student loan debt should be discharged because her education has not improved her employment opportunities. However, other bankruptcy courts have held that a "debtor is not entitled to an undue-hardship discharge by virtue of selecting an education that failed to return economic rewards." *Ammirati v. Nellie Mae, Inc.*, 187 B.R. 902, 905 (D.S.C.1995). In addition, the Seventh Circuit has held that if "an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow." *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993). Accordingly, the income of Mr. Buchanan may be considered in the undue hardship analysis and the value Mrs. Buchanan associates with her education is inconsequential.

 The financial records of the Buchanans establish that Mrs. Buchanan could pay the post-petition interest on her student loan and maintain an above-minimum standard of living. From June through August, 2001, for example, the Buchanans paid approximately $70.00/month for satellite television, $10.00/month for video rental, and $26.00/month for home internet service. In addition, the family incurred phone bills as high as $80.00/month. By substituting basic cable for their satellite television service, by forgoing the expense of having home internet service and movie rental, and by limiting

4. Noting that the Bankruptcy Code does not define undue hardship, in *Kielisch* the Fourth Circuit stated that "some courts ... have held that a discharge based on undue hardship requires a debtor to show" each of the three factors discussed in *Brunner*. *Kielisch*, 258 F.3d at 319 n. 4. In discussing which undue hardship test courts in the Fourth Circuit should apply, Chief Judge Haden has noted that "[w]hile our Court of Appeals has not yet definitively resolved the issue, it appears several months ago to have favorably mentioned *Brunner*.... " *Education Resources Institute v. Ekenasi*, 271 B.R. 256, 262 n. 8 (S.D.W.Va. 2002).

their long-distance phone call expenditures, the Buchanans could afford to repay Mrs. Buchanan's student loan debt. Subjecting a family to basic cable and the hassle associated with traveling to the local library to surf the web hardly constitutes undue hardship. *See Dillon*, 189 B.R. 382, 386, and *In re Wardlow*, 167 B.R. 148, 151 (Bankr.W.D.Mo.1993), holding that telephone and cable television costs may be considered in the undue hardship analysis.

The case of *Education Resources Institute v. Ekenasi*, 271 B.R. 256 (S.D.W.Va. 2002) (Haden, C. J.), illustrates how fact intensive the application of the *Brunner* factors is. There, the district court discharged student loan debt after finding that the debtor made every effort to lower his cost of living, tried to find a better paying job, drove his vehicle until it no longer functioned, never dined out with his family, and purchased all of the clothes for his family at thrift stores. Under those circumstances, the failure to discharge some of the student loan debt would have subjected Mr. Ekenasi to undue hardship and prevented him from providing, "in any reasonable way, for the medical, for the nurturing needs, the necessities of [his] children...." *Ekenasi*, 271 B.R. at 260 (quoting a comment made by Bankruptcy Judge Pearson from the bench). Here, by contrast, Mr. Buchanan's child support obligations will terminate upon completion of the Chapter 13 Plan, the Buchanans have income in excess of their expenses, and their satellite television, home movies, and internet service are not "necessities."

 The Buchanans cannot avoid their legal obligation to repay their debts by arguing that they would rather dedicate funds available to pay their debts to other priorities. Mr. Buchanan's legal responsibility to support his minor children certainly must be considered when determining the Buchanans' ability to repay their debts; however, he cannot avoid his obligation towards his creditors by spending his money on an emancipated child. If given the choice between giving money to their creditors or their legally independent children, undoubtably most debtors would choose their children. Were this allowed, few debtors would be adjudged capable of repaying their debts. The Court, therefore, finds that requiring Mrs. Buchanan to repay her student loan, with interest, would not subject the Buchanans to undue hardship.[5]

## V. CONCLUSION

The Court holds that the Bankruptcy Court erred in discharging the post-petition interest on Mrs. Buchanan's student loan debt. Because Ms. Buchanan and her dependents will not be subjected to undue hardship, interest may accrue on Ms. Buchanan's student loan debt during the pendency of the Buchanan's Chapter 13 proceeding.

The October 10, 2001 decision of the Bankruptcy Court ordering that no interest shall accrue on the debts due and owing Educational Credit Management Corporation during the pendency of the Buchanans' Chapter 13 case is **REVERSED** and this matter is **DISMISSED WITH PREJUDICE** from the docket of this Court.

It is so **ORDERED**.

---

**5.** Although the Buchanans allege that requiring them to repay Mrs. Buchanan's student loan, with interest, would "be a hardship," the test is not whether loan repayment would subject the debtor to hardship; repayment of debt is rarely unaccompanied by hardship. Student loan debt can be discharged only upon a showing, by the debtor, that requiring the debtor to repay the entire student loan would subject the debtor to *undue* hardship. *Brunner*, 831 F.2d 395.

The Clerk is directed to transmit copies of this Order to counsel of record herein.